**UNITED STATES of America, Plaintiff,**

v.

**John A. RAPANOS, Defendant.**

**No. 93–CR–20023–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 3, 1995.

Janet L. Parker, Asst. U.S. Atty., Bay City, MI, for plaintiff.

David R. Skinner, John L. Wildeboer, Bay City, MI, for defendant.

### MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

## I. INTRODUCTION

This matter is before the Court on the defendant's Motion for Acquittal or for New Trial. The government has filed a response, to which the defendant has replied. This Court finds that the facts and the legal arguments are adequately presented in the briefs, and that the decisional process would not be significantly aided by oral arguments. Accordingly, the motion before this Court will be disposed of upon the briefs submitted by the parties. *See* E.D.Mich.Local R. 7.1(e)(2). For the reasons set forth below, defendant's Motion for a New Trial is GRANTED.

## II. BACKGROUND

Defendant John Rapanos was charged in a four-count Superseding Indictment. Counts I and IV alleged that defendant engaged in the knowing discharge of pollutants into waters of the United States, that is, wetlands located in Williams Township, Bay County, Michigan, in violation of 33 U.S.C. § 1131(a) and § 1319(c)(2)(a); and 18 U.S.C. § 2. Counts II and III alleged that defendant threatened and intimidated a witness with intent to induce the witness to withhold documents from an official proceeding, in violation of 18 U.S.C. § 1512(b).

Following a mistrial declared in July, 1994, the case was transferred to Flint and subsequently retried beginning February 1, 1995. During trial, the Court granted defendant's Motion for Acquittal on Counts II and III. On March 7, 1995, the jury returned a verdict of "Guilty" on Counts I and IV. The instant motion followed.

## III. OPINION

### A. Applicable Standards of Review

#### 1. Federal Rule of Criminal Procedure 29

Motions for Judgment of Acquittal are brought pursuant to Fed.R.Crim.P. 29. Rule 29 states, in pertinent part:

**(c) Motion after Discharge of Jury.**

If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period. If a verdict of guilty is returned

the court may on such motion set aside the verdict and enter judgment of acquittal ...

*Id.*

### 2. Federal Rule Criminal Procedure 33

Fed.R.Crim.P. 33 states, in pertinent part:

**Rule 33. New Trial**

The court, on motion of a defendant may grant a new trial to that defendant if required in the interest of justice ... A motion for a new trial shall be made within 7 days after verdict or finding of guilty or within such other time as the court may fix during the 7 day period.

*Id.*

### 3. Federal Rule Criminal Procedure 52

Fed.R.Crim.P. 52 states:

**Harmless and Plain Error**

**(a) Harmless Error.** Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

**(b) Plain Error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

*Id.*

## B. Analysis and Discussion

On February 15, 1995, during the defendant's case-in-chief, defendant John A. Rapanos took the stand and testified in his own behalf. On cross examination, the prosecution, pursuing a line of questioning that addressed the inspection of the property and attempted warrantless entry of the property by Michigan Department of Natural Resources Officers ("DNR") on August 22, 1989, asked Rapanos the following series of questions:

Q: And this August 30th meeting, again, you had not let the DNR on the property?

\* \* \*

A: He [Jake Allen, Defendant's attorney] told them just point blank, you will not be allowed on the property.

Q: And you agreed with that?

A: He said you cannot go on the property without a search warrant, I think.

Q: And you said the same thing?

A: [nonresponsive]

Q: I would like you to answer the question, though. You also told the DNR that they could not go back on the property without a search warrant?

A: I didn't say those words.

Q: Words to that effect?

A: No.

Q: Since you were certain in your own mind that there were no wetlands there, why not let the DNR on the property?

A: It's not my decision.

Q: Were you practicing concealment again?

A: They could get a search warrant, Miss Parker, and they could go out there the next day if they wanted to. We couldn't stop them, okay.

There's no concealment. They know the procedure. First of all, they were trespassing on our property. Jake was very upset about that. He said, look, you don't go on any of our properties ever again. Don't you dare go on there without our permission or a search warrant. That's what was said [at] that meeting.

Q: So were you practicing concealment, or not?

\* \* \*

Q: So you weren't willing to say, don't worry, I have nothing to hide, let them on?

A: I don't think that ever came up.

Q: All right. And as a client, you have the ability to do that; right? To say to your attorney, look, go ahead, let them on.

A: I learned a long time ago, that if you don't take your attorney's advice, you shouldn't have him....

Q: So the bottom line is, though, you knew that you could talk to him about that and try to convince him to do that and you chose not to?

A: It didn't happen.

Tr. Feb. 15, 1995, pp. 95–97. *See generally* pp. 87–98.

At the time of the cross examination, the Court was deeply concerned about the prejudicial effect of such questioning, finding it akin to comments regarding a defendant's silence following *Miranda* warnings. The Court was prepared to offer a curative instruction, however, the questioning proceeded without objection from the defense.

During the course of the trial the objections from each side had been so numerous, that, when defense counsel failed to object, the Court was loath to interfere. It was the perception of the Court at the time that the decision not to object must have been strategic, and it is generally the Court's policy to allow attorneys latitude in the manner of presentation of their cases. Upon consideration and review, the Court finds that it was plain error to allow the discourse to continue.

The Court is aware that "[t]o be plain, an error must be conspicuous, at least in hindsight." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). The Court further recognizes that the "plain error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). While Fed.R.Crim.P. 52(b) is primarily a tool of appellate courts, used to review issues first raised on appeal, the Court notes that Rule 52(b) is not limited by its terms to such application.[1]

The Supreme Court has addressed cases in which the defendant was severely prejudiced by comments and arguments relating to his exercise of his Fifth Amendment right to refuse to testify, or to remain silent following advisement of his *Miranda* rights. *See, e.g. Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Similarly and more recently, courts have applied the "plain error" standard to comments and arguments addressing a defendant's refusal to consent to a warrantless

search. *See e.g. United States v. Mazzone*, 782 F.2d 757 (7th Cir.1986); *United States v. McNatt*, 931 F.2d 251 (4th Cir.1991). Particularly instructive is *United States v. Thame*, 846 F.2d 200 (3rd Cir.1988), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 333 (1988).

In *Thame*, the prosecution argued to the jury that the defendant's refusal to allow a full search of his luggage was evidence that he knew the bag contained cocaine. *Id.* at 205. The *Thame* court reasoned that the prosecutor's argument—which suggested that exercise of the fourth amendment right to be free from warrantless searches was evidence of guilt—was similar to (1) the comments regarding a defendant's silence as evidence of guilt, challenged in *Griffin, supra*, and (2) comments regarding a defendant's exercise of the sixth amendment right to counsel as evidence of guilt. *Id.* at 206; *see United States v. McDonald*, 620 F.2d 559 (5th Cir.1980). For the limited analysis involving prosecutorial comment, the *Thame* court "[saw] little, if any, valid distinction …" between comments regarding the exercise of Fourth, Fifth or Sixth Amendment rights. 846 F.2d at 206. This Court agrees.

The *Thame* court concluded that, on the specific facts in question, the comments did not rise to a constitutional dimension, and did not constitute "plain error." *Id.* at 207. This Court notes that aggravating factors exist which both distinguish the instant case from *Thame*, and also make it more troublesome.

First, in the case at bar, the prosecution's questions were asked in the midst of the taking of evidence from the defendant himself, a critical portion of the trial. The comments were not made during opening statements or closing arguments, about which the jury is always admonished that "the attorneys comments are not evidence." Rather, the defendant himself was forced to defend his exercise of his constitutional right. In fact the questioning concluded with the defendant being asked *why he hadn't convinced*

---

1. Although, the Court does note that a District Court is prohibited from utilizing the "plain error" standard in a *collateral* attack on an original

criminal trial. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

*his attorney* that he should waive his Fourth Amendment right. In *Doyle, supra,* the Supreme Court reversed and remanded where the prosecutor asked the defendant to explain his silence at the time of arrest. 426 U.S. at 613–16, 96 S.Ct. at 2243. In addition to the questions, the prosecution insinuated through questions, if not argued, that when the defendant refused to allow DNR officers onto his property on August 22, 1989, he was concealing evidence.

Second, although the trial was particularly hard fought, often contentious, and at some times bitterly disputed, the comments were not followed by an objection. Had the defense objected to the first questions, the Court would have had the opportunity to admonish the prosecution, instruct the jury of the impropriety of such questioning, and reduce the danger of prejudice. Instead, the line of questioning continued for several minutes, consuming more than ten pages of transcript. *See* Tr. Feb. 15, 1995 pp. 87–97. In the hindsight afforded by Rule 52 review, it is clear that the questioning infringed upon a protected right, and that the Court must intervene.

■ Moreover, the Court is particularly concerned about the effect of the questions in light of the context of the trial and the zealousness with which the prosecution pursued its case. In his motion, defendant has argued that he is entitled to acquittal based upon prosecutorial misconduct.

In his Motion for Acquittal, defendant objects to references to the devil made by the prosecution in its closing argument quotation from *A Man for All Seasons;* to a half-completed and ill-conceived comparison of viewing the Salzburg Road property without trees to viewing the Warsaw ghetto without Jews; to an insinuation that defense counsel asked a witness to alter a report; and to

what defendant perceived as the prosecution's attempt to paint the use of a "strawman" in real estate transactions as an unethical practice.

The prosecution responds that "prosecutorial misconduct warrants reversal of a conviction only if, based upon a review of the record as a whole, it 'permeates the entire atmosphere of the trial'" Resp. Br. p. 9 (citing *United States v. Dandy,* 998 F.2d 1344, 1352 (6th Cir.1993)). The prosecution also contends that its comments, in general, were fair comments on the credibility and motivations of the witnesses, based on the evidence of record.

While the Court does not perceive the actions in question as rising to the level of prosecutorial misconduct,[2] the Court would characterize it as "prosecutorial overkill."[3] The Court also notes that the defense stretched the boundaries of courtroom civility. However, in such an emotionally charged situation, the Court must be more concerned about—and vigilant of—the damage caused by a remarks or questions which it perceives as crossing the line.

Finally, the Court is particularly concerned that the prejudicial questions regarding defendant's exercise of his Fourth Amendment rights may have had more weight and influence with the jury seated in this matter, than they would have had in other cases. In *Thame,* the Court found that there was overwhelming evidence of the defendant's guilt from which the jury could reach a decision, and therefore the comments were *not* "sufficiently major that a miscarriage of justice will result if the conviction is not reversed." *Thame, supra,* at 207. This Court cannot reach the same conclusion in the instant action.

It is the opinion of the Court, after viewing the entirety of the trial, that a reasonable

---

**2.** The Government correctly argues that the standard for prosecutorial misconduct is very high, and that "a criminal conviction is not to be lightly overturned on the basis of the prosecutor's comments standing alone, for the comments must be viewed in context...." *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).

**3.** The Court has also considered the doctrine of "invited response," and finds it not applicable. As noted by the Seventh Circuit:

[p]roperly understood, that doctrine does not condone the prosecutor's descending to the level of the defense counsel or enact the proposition that two wrongs make a right; it merely recognizes that the impact on the defendant from the prosecutor's [misstatements] may be less if the defendant's counsel aroused the jury against the prosecutor.

782 F.2d 757, 762 (citing *U.S. v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985)).

jury could have rendered either verdict. In addition, at one point during deliberations, the jury returned a note that indicated that they were deadlocked, "with several people on each side that say they won't change their minds." In such a situation, an unchecked prejudicial comment may indeed have tipped the scales in favor of conviction.

Accordingly, based on the rationale of *United States v. Thame,* and after careful consideration of the factors unique to this action, the Court finds that, pursuant to Rule 33, the interest of justice requires that defendant be given a new trial. Therefore, defendant's Motion for New Trial is GRANTED.

Case law is clear that a Motion for Acquittal is not to be granted in order to "punish" the prosecution. Moreover, the Court finds that the prosecution did not engage in misconduct. Defendant's Motion for Acquittal is therefore DENIED, as the prejudice visited upon defendant can be remedied at trial.

## IV. CONCLUSION

For the reasons stated above, defendant's Motion for Acquittal is DENIED. Defendant's Motion for a New Trial pursuant to Fed.R.Crim.P. 33, is GRANTED.

IT IS SO ORDERED.