UNITED STATES of America,
Plaintiff,

v.

D–1 John A. RAPANOS, Defendant.

No. 93–CR–20023–01.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 21, 2002.

David R. Skinner, John L. Wildeboer, Skinner Professional Law Corp., Bay City, MI, David J. Haywood, D. Haywood & Assoc., Lansing, MI, Thomas V. Wilhelm, Waterford, MI, for Defendant.

Jennifer J. Peregord, U.S. Atty's Office, Detroit, MI, Janet L. Parker, U.S. Atty's Office, Bay City, MI, for U.S.

## OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on remand from the United States Supreme Court, and the United States Court of Appeals for the Sixth Circuit. The Court ordered the parties to submit briefs on the following issues: 1) to what extent, if any, is 33 U.S.C. § 1344(a) implicated in this case? 2) is Congress' authority under the relevant provisions of the Clean Water Act involved in this case consistent with the Commerce Clause of the United States Constitution? and 3) what is the import of the remand order from the United States Supreme Court? The parties have fully briefed the Court on these issues. Upon reviewing the briefs, the Court further ordered the parties to brief the Court on the following issue: whether the wetlands on Defendant's property were directly adjacent to navigable waters? Again, the parties fully briefed the Court. The par-

ties also submitted stipulated exhibits from the trial, and the government submitted a supplemental brief. The Court finds that the parties have adequately set forth the relevant law and facts, and that oral argument would not aid in the disposition of this case on remand. *See* E.D.MICH.L.R. 7.1(e)(2). Accordingly, the Court ORDERS that this case on remand be decided on the briefs submitted. For the reasons stated below, the Court finds as a matter of law that the wetlands on Defendant's property were not directly adjacent to navigable waters, and therefore, the government cannot regulate Defendant's property. Therefore, Defendant's conviction is set aside, and this case is DISMISSED.

## II. BACKGROUND

This case has been remanded to this Court from the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit for reconsideration in light of the Supreme Court's opinion in *Solid Waste Agency of No. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). The Court shall provide sufficient background facts in order to decide the remand order from the Supreme Court.

Defendant owns a 175 acre plot of land located in Williams Township, Michigan. Defendant's property is not directly adjacent to a navigable body of water; it is over twenty miles from Saginaw Bay, and it roughly twenty miles from where the Kawkawlin River—the nearest body of navigable water—becomes navigable. That 175 acre plot of land contained wet-lands. At no time did the wetlands ever occupy more than one-third of Defendant's land, and usually occupied less. Like Defendant's property itself, the wetlands were not directly adjacent to either the Saginaw Bay or the Kawkawlin River.

Defendant wanted to sell his property to a developer who planned on developing the property. In order to make the land more enticing, Defendant cleared the heavily wooded plot, and filled the wetlands—which were located entirely within his own property—with sand. He did not have the appropriate permit to do so. Thereafter, the government prosecuted Defendant for filling the wetlands with sand while failing to obtain the proper permit.

Defendant was originally brought to trial in July 1994, but due to scheduling concerns, a new trial was ordered. Defendant's second trial commenced in February 1995, and ended in March with a jury convicting Defendant of two counts of knowingly discharging pollutants into waters of the United States without a permit, in violation of § 301(a) of the Federal Water Pollution Control Act Amendments of 1972 (hereinafter "Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1311(a).

After the trial, upon Defendant's motion, the Court reviewed the course of the trial, and ordered a new trial due to a cross-examination of Defendant by the government regarding Defendant's refusal to allow a search of his property. The Court of Appeals reversed, holding that the Court's order was an abuse of discretion.[1] *See United States v. Rapanos*, 115 F.3d 367,

---

1. Defendant did not allow officials from the Michigan Department of Natural Resources to inspect his property. *See Rapanos*, 115 F.3d at 369. At trial, the government cross-examined Defendant about this refusal. *See id.* After the trial, the Court declared a mistrial because it found that Defendant had a right under the Fourth Amendment to deny such an inspection, and that it was improper for the government to cross-examine him about exercising his right. *See id.* at 371. Over a vigorous dissent, the Sixth Circuit reversed, holding that because Defendant's property was an open field he did not have an expectation of privacy that implicated the Fourth Amendment. *See id.* at 374. Therefore, the cross-examination was not improper. *See id.* at 374.

374 (6th Cir.1997). On remand, the Court sentenced Defendant to three years' probation and a fine of $185,000. Defendant appealed his conviction, and the government cross-appealed his sentence. The Court of Appeals held that this Court improperly sentenced Defendant and remanded the case for resentencing, while at the same time summarily dismissing Defendant's appeal. *See United States v. Rapanos,* 235 F.3d 256, 261 (6th Cir.2000). Defendant sought a writ of certiorari from the United States Supreme Court. The Supreme Court granted the writ, vacated the Court of Appeals' order, and remanded the case to the Court of Appeals, instructing the Court of Appeals to reconsider the case in light of *Solid Waste Agency.* The Court of Appeals remanded the case to this Court. *See United States v. Rapanos,* 16 Fed.Appx. 345 (6th Cir.2001).

### III. ANALYSIS

■ Defendant was convicted of violating the Clean Water Act. Congress passed the CWA for the purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." *See* 33 U.S.C. § 1251(a). The CWA was enacted because the Federal Water Pollution Control Act, which was passed in 1948, proved to be ineffective. *See Environmental Prot. Agency v. California ex rel. State Water Res. Control Bd.,* 426 U.S. 200, 202, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976). Congress determined that part of the reason the Federal Water Pollution Control Act failed was because it "focused on the tolerable effects rather the preventable causes of water pollution." *Id.* One way Congress chose to curtail the causes of water pollution was by broadly defining the term "navigable waters." *See United States v. Riverside Bayview*

*Homes, Inc.,* 474 U.S. 121, 133–34, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985); *see also United States v. Ashland Oil and Transp. Co.,* 504 F.2d 1317, 1325 (6th Cir.1974). The definition of "navigable waters" is central to this case.

The CWA defines "navigable waters" as "the waters of the United States." 33 U.S.C. § 1362(7). The phrase "navigable waters" is used in the statute that governs this case: § 404 of the CWA, which is codified as 33 U.S.C. § 1344. The CWA makes unlawful "the discharge of any pollutant [including sand, *see* 33 U.S.C. § 1362(6) ] by any person," except as in compliance with "section[ ] ... 404 of this title." 33 U.S.C. § 1311(a). Section 404 provides that a person may discharge fill material into "navigable waters" in order to "bring[ ] an area of ... navigable waters into a use to which it was not previously subject." 33 U.S.C. § 1344(f)(2). Before a person may do so, however, that person must obtain a permit from the Secretary of the Army, acting through the Army Corps of Engineers.[2] *See* 33 U.S.C. § 1344.

The government argues that the wetlands at issue here fall within the scope of § 404 because they constitute "waters of the United States." Regulations promulgated by the Army Corps of Engineers define "waters of the United States" as including: "All other waters such as ... wetlands ... the use, degradation or destruction of which could affect interstate or foreign commerce...." 33 C.F.R. § 328.3. The regulations also consider tributaries of navigable waters and wetlands adjacent to navigable waters as falling within the definition of "waters of the United States." *See* 33 C.F.R. § 328.3(5), (7). The government argues that the wetlands on Defen-

---

**2.** The Army Corps of Engineers has been charged since 1899 with the protection of the

navigable waters of the United States.

dant's 175 acre property were "waters of the United States" because they constituted a "tributary." The government argues that there was evidence introduced at trial that demonstrates that the wetlands at issue were "hydrologically connected and 'directly adjacent to navigable waters." [3]

The government is correct in noting that evidence was introduced at trial supporting its position that the wetlands on Defendant's property were connected to navigable waters and therefore constituted "waters of the United States." That fact, however, was never explicitly found, either by the jury or by this Court, nor was such a finding necessitated by the jury instructions.[4] Instead, the jury instructions allowed the jury to find that the wetlands were completely isolated, yet had some impact on interstate commerce. The jury was instructed: "The term ["]waters of the United States["] includes waters[,] such as lakes, rivers, streams, including intermittent streams or wetlands, the use[,] degradation or destruction of which could affect interstate or foreign commerce." The jury was further instructed that the term "waters" also includes "tributaries of the waters that I've just identified, and wetlands adjacent to waters of the United States." Thus, while the jury could have found that the wetlands on Defendant's property were adjacent to a tributary, such a finding was not necessary; indeed, it is possible under these instructions that the jury found the wetlands at issue to be completely "isolated" from any navigable wa-

ters, yet still impacted interstate commerce.

These jury instructions present a problem in light of the Supreme Court's order to reconsider this case in light of *Solid Waste Agency*. There, the Supreme Court held that the Army Corps of Engineers lack the statutory authority to regulate wetlands that are completely isolated from any navigable waters. *See Solid Waste Agency*, 531 U.S. at 171, 121 S.Ct. 675 ("[R]espondents point us to no persuasive evidence that the House bill was proposed in response to the Corps' claim of jurisdiction over nonnavigable, isolated, intrastate waters...."). Thus, whether Defendant's wetlands had any significant nexus to navigable waters is a critical fact that was left unresolved by the jury in this case. At first glance, it would appear that this Court needs to hold yet another trial in order to resolve whether Defendant's wetlands were directly adjacent to navigable waters.

Upon closer inspection of the government's proposed factual argument, it is clear that the Court does not need to hold another trial. The government argues in its brief on remand that there was evidence at trial that establishes the connection between Defendant's land and navigable water. The government argues that Defendant's wetlands had a "surface hydrological connection" to a ditch dubbed the Labozinski drain, which empties into Hoppler Creek, which eventually winds its way into the Kawkawlin River, which in

---

**3.** It is worth noting that the majority opinion in *Solid Waste Agency* repeatedly refers to the wetlands at issue in that case as "isolated," despite the fact that, as the dissent points out, even the most seemingly "isolated" wetlands are in fact both hyrdologically connected, as well as ecologically connected, to navigable waters. *See Solid Waste Agency*, 531 U.S. at 176 n. 2, 121 S.Ct. 675 (Stevens, J., dissenting). The dissent notes that the wetlands in *Solid Waste Agency* are at least ecologically

connected. *See id.* Despite this, the majority still refers to the wetlands as isolated, indicating what is likely a significant shift in its CWA jurisprudence. This leads the Court to conclude that even if there is a hydrological connection, Defendant's wetlands may be considered "isolated" for purposes of the CWA.

**4.** The jury instructions at issue were proposed by both the government and Defendant.

turn flows into Saginaw Bay. The nearest body of navigable water to Defendant's property is the Kawkawlin River, which has as its head point of navigation the Michigan Central R.R. bridge in Kawkawlin, Michigan, about four miles above its mouth. *See* Appendix A: Navigable Waters of the United States in Army Engineering District, Detroit, 1981, *available at* http:// www/dnr.state.mi.us/enforcement/ publicrights.htm. Thus, the nearest body of navigable water to Defendant's property is roughly twenty linear miles away. Upon reviewing these facts, and upon closely reviewing *Solid Waste Agency*, as well as the Supreme Court's decision in *Riverside Bayview Homes*, the Court finds, as a matter of law, that the wetlands on Defendant's property were not adjacent to navigable waters.

The Supreme Court's opinion in *Solid Waste Agency* is not directly on point, though it does establish a mode of analysis for this Court. In that case, plaintiffs, a consortium of cities in suburban Chicago, sought a place to dispose of solid waste. *See Solid Waste Agency*, 531 U.S. at 162–3, 121 S.Ct. 675. They discovered an abandoned sand and gravel mining pit that was located entirely within Illinois. *See id.* at 163, 121 S.Ct. 675. The site was ideal for plaintiffs, however, over time, small ponds developed on the property. *See id.* Defendants, the Army Corps of Engineers, determined that they had jurisdiction over the property, but refused to issue a permit despite plaintiffs' efforts to comply with all of the requirements for such a permit. *See id.* at 164–5, 121 S.Ct. 675. Defendants based their determination of jurisdiction on the fact that migratory birds were spotted at the site. *See id.* at 164, 121 S.Ct. 675.

The plaintiffs brought an action attacking defendants' jurisdiction over the site.

*See id.* at 165, 121 S.Ct. 675. The Supreme Court held that defendants lacked jurisdiction. *See id.* In its analysis, the Supreme Court examined the "migratory bird rule," which was a regulation that defendants promulgated pursuant to § 404 of the CWA. Basically, the "migratory bird rule" stated that defendants' jurisdiction extended to all intrastate waters that are or would be used by birds protected either under migratory bird treaties or other birds that cross state lines. *See id.* at 164, 121 S.Ct. 675, (citing 51 Fed.Reg. 41217). In order to determine the validity of this regulation, the Supreme Court analyzed defendants' statutory authority, and interpreted the same statute that is involved in this case.

To begin its examination of the meaning of § 404 of the CWA, the Supreme Court looked to its decision in *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). In *Riverside Bayview Homes*, a developer began to fill in a wetland area, a non-navigable body of water, that was directly adjacent to Black Creek, a navigable body of water.[5] *See id.* at 131, 106 S.Ct. 455. At issue in *Riverside Bayview Homes* was whether a wetland that was immediately adjacent to a body of navigable water could be regulated under § 404 of the CWA, despite the fact that the wetland itself was not navigable. *See id.* at 123, 106 S.Ct. 455. The Supreme Court answered that query in the affirmative, relying on regulations promulgated by the Army Corps of Engineers.

In its opinion in *Riverside Bayview Homes*, the Supreme Court noted the broad definition given "navigable waters" under the CWA, and stated that Congress intended that "at least some waters that would not be deemed navigable under the

---

5. Black Creek is a tributary to the Clinton River, which in turn flows into Lake St. Clair. Both the Clinton River and Lake St. Clair are also navigable.

classic understanding of that term" would be subject to regulation. *Id.* at 133, 106 S.Ct. 455 (citing S.Conf.Rep. No. 92–1236, p. 144 (1972); 118 Cong.Rec. 33756–33757 (1972)). The Supreme Court then examined the regulations promulgated by the Army Corps of Engineers, and noted that the Corps reasoned that the causes of water pollution do not rely on "artificial lines;" rather, because water flows in hydrologic cycles, the regulation of activities that cause water pollution must encompass the entire aquatic system. *See id.* at 134, 106 S.Ct. 455 (citing 42 Fed.Reg. 37128 (1977)). The Supreme Court then quoted the Corps: " 'For this reason, the landward limit of Federal jurisdiction under Section 404 must include any adjacent wetlands that form the border of or are in reasonable proximity to other waters of the United States....' " *Id.* at 134, 106 S.Ct. 455 (quoting 42 Fed.Reg. 37128 (1977)). The Supreme Court concluded that this regulation is reasonable in light of the statutory definition.

■ This Court agrees with the outcome of *Riverside Bayview Homes.* Because the goal of the CWA is to curtail water pollution, the Court agrees with the conclusion that federal jurisdiction must encompass some non-navigable water. Rationally, if a quantity of a toxic chemical was discharged into wetlands that are adjacent to a navigable body of water, such as the wetland in *Riverside Bayview Homes,* that chemical would undoubtedly affect the navigable body of water. An example of that occurred in *Ashland Oil.* There, the defendant discharged 3,200 gallons of oil into a non-navigable tributary, roughly one hundred feet from a creek. *See Ashland Oil,* 504 F.2d at 1319. A short time later, a visible sheen appeared on the creek; in turn, the creek flowed into a navigable river. *See id.* at 1320. Therefore, the Court agrees that it is necessary for the federal government to regulate some non-navigable waters to prevent pollution to navigable waters. *See U.S. v. Krilich,* 152 F.Supp.2d 983, 988 (N.D.Ill. 2001) ("[I]t is still the rule that a nonnavigable (in the traditional sense) wetland *directly adjacent* to a navigable body of water falls within the purview of the CWA....") (emphasis added).

While these cases are informative, they are not binding on this Court because the facts in this case are distinguishable. Defendant's wetlands were not directly adjacent to navigable waters as was the wetland in *Riverside Bayview Homes,* and Defendant's activities did not have the same direct impact on navigable waters as did the defendant in *Ashland Oil.* These differences are crucial because despite its broad reading of the CWA in *Riverside Bayview Homes,* the Supreme Court concluded in *Solid Waste Agency* that the CWA does have limits. The Supreme Court invalidated the migratory bird rule because the CWA contains the words "navigable waters," which act as a limit on federal jurisdiction. *See Solid Waste Agency,* 531 U.S. at 172, 121 S.Ct. 675.

That analysis applies here, too. The fact remains that § 404 of the CWA uses the words "navigable waters." *See* 33 U.S.C. § 1344. While it is true that the statute does broadly define navigable waters, it is not true that the words "navigable waters" are devoid of any meaning. *See Solid Waste Agency,* 531 U.S. at 172, 121 S.Ct. 675; *see also Riverside Bayview Homes,* 474 U.S. at 133, 106 S.Ct. 455. Indeed, that the statute uses the term "navigable waters" is significant; it has the import of showing this Court what Congress intended as its authority for enacting the CWA: "its traditional jurisdiction over waters that were or had been navigable in fact or which reasonably could be so made." *Solid Waste Agency,* 531

U.S. at 172, 121 S.Ct. 675 (citing *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 407–408, 61 S.Ct. 291, 85 L.Ed. 243 (1940)). In other words, the plain text of the statute mandates that navigable waters must be impacted by Defendant's activities.[6]

Upon reviewing the government's proposed facts, the Court finds, as a matter of law, that the government is unable to prove that Defendant, whose land contained wetlands that are located roughly twenty miles from the nearest body of navigable water, affected any navigable waters.

### IV. CONCLUSION

For the reasons stated above, the Court finds as a matter of law that the wetlands on Defendant's property were not directly adjacent to navigable waters, and therefore, the government cannot regulate Defendant's property. Therefore, Defendant's conviction is set aside, and this case is DISMISSED.

IT IS SO ORDERED.

---

**6.** Because the Court finds the meaning of the statutory text to be clear, it need not be concerned with the level of deference that it is to give the agency's interpretation of the statute. *See Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.")