*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0268P (6th Cir.)
File Name: 03a0268p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

No. 02-1377

JOHN A. RAPANOS,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 93-20023—Lawrence P. Zatkoff, Chief District Judge.

Argued: June 18, 2003

Decided and Filed: August 5, 2003

Before: MARTIN, Chief Circuit Judge; NORRIS and
ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jennifer J. Peregord, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Thomas V. Wilhelm, Waterford, Michigan, for Appellee. **ON BRIEF:** Jennifer J. Peregord, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Thomas V. Wilhelm, Waterford, Michigan, David E. Dearing, Indianapolis,

Indiana, for Appellee. Virginia S. Albrecht, Stephen M. Nickelsburg, HUNTON & WILLIAMS, Washington, D.C., for Amici Curiae.

---

## OPINION

---

BOYCE F. MARTIN, JR., Chief Circuit Judge. This case arises from the criminal conviction of John Rapanos for unlawfully filling wetlands in Michigan in violation of the Clean Water Act, 33 U.S.C. § 1311(a). After the conviction, an appeal, a denial of *certiorari*, a second appeal, and a grant of *certiorari*, the Supreme Court remanded the case back to us to review in light of *Solid Waste Agency of North Cook County v. Army Corps of Engineers*, 531 U.S. 159 (2001). We remanded the case to the district court. The district court found that, in light of *Solid Waste*, Rapanos's land was outside the jurisdiction of the Clean Water Act and the charges were dismissed. The United States now appeals this decision. For the reasons below, we REVERSE the judgment of the district court and REINSTATE the convictions.

John Rapanos owns a one hundred and seventy-five-acre plot of land in Williams Township, Bay County, Michigan. This plot once contained forested wetlands and cleared meadow areas. During the course of this proceeding, the wetlands in question have been described as between eleven and twenty miles from the nearest navigable-in-fact water. The government argues that there is a significant and direct link between the wetlands on Rapanos's land and this navigable waterway, rendering the wetlands covered by the Clean Water Act. The wetlands are connected to the Labozinski Drain (a one hundred year-old man-made drain) which flows into Hoppler Creek which, in turn, flows into the Kawkawlin River, which is navigable. The Kawkawlin eventually flows into Saginaw Bay and Lake Huron.

At some unstated time, Rapanos decided to sell this plot of land to developers, but in order to make the land more attractive, Rapanos made plans beginning in 1988 to clear the trees from the land and to eradicate the wetlands that were on the property. In December of 1988, Rapanos's attorney approached the Michigan Department of Natural Resources with the development plan. The Department informed him that the land contained wetlands and a permit would be necessary for development to begin on the area, advising that a wetlands consultant be hired to help Rapanos get the permit. Rapanos hired a consultant, who found at least forty-nine and at most fifty-nine acres of wetlands. After receiving the report, Rapanos asked the consultant to destroy any paper evidence of the wetlands on his property and then threatened to fire him and sue if he did not comply. Despite warnings from the Michigan Department of Natural Resources and the United States Environmental Protection Agency, Rapanos began destroying the wetlands on his property by filling them with earth and sand.

On November 7, 1989, a search warrant was issued, and the executing officers found twenty-nine acres of wetlands on Rapanos's property. In April of 1991, the Michigan Department of Natural Resources asked the United States Environmental Protection Agency to intervene and force compliance from Rapanos. The facts established at trial that Rapanos and his attorney lied in response to the compliance order. Subsequently, Rapanos was charged with knowingly discharging pollutants into the waters of the United States without a permit, a violation of the Clean Water Act. While acknowledging that the wetlands were destroyed, Rapanos argues that the area is not subject to the Clean Water Act because of a lack of federal jurisdiction. He argues the wetlands on his property are not part of the "waters of the United States" as required by the Act. The Act defines "navigable waters" as "waters of the United States." 33 U.S.C. § 1362(7).

Rapanos's first trial ended in a mistrial, and the second trial concluded with a guilty verdict. *United States v. Rapanos*, 895 F. Supp. 165, 166 (E.D. Mich. 1995). Rapanos then filed a motion for judgment of acquittal and a new trial. The district court denied the motion for judgment of acquittal but granted a new trial. *Id*. at 170. The district court found that, although defense counsel did not object to certain questioning by the prosecution, the court committed plain error by permitting the questioning to proceed. *Id*. at 168. On appeal to this court, we held that the line of questioning was not improper and, therefore, the district court did not commit plain error. We reversed the court's grant of a new trial and remanded for sentencing. *United States v. Rapanos*, 115 F.3d 367, 374 (6th Cir. 1997).

The district court sentenced Rapanos to three years of probation and ordered him to pay $185,000. He appealed his conviction, and the United States cross-appealed his sentence. This court affirmed Rapanos's conviction on direct appeal but remanded to the district court for resentencing. *United States v. Rapanos*, 235 F.3d 256, 261 (6th Cir. 2000). Rapanos filed a petition for writ of *certiorari*, which the Supreme Court granted. The order granting the writ vacated this court's judgment and remanded the case to us for further consideration in light of *Solid Waste*, 531 U.S. 159. *Rapanos v. United States*, 533 U.S. 913 (2001). We remanded the case to the district court for consideration in light of *Solid Waste*. *United States v. Rapanos*, Nos. 98-2424, 99-1578, 99-1074, 2001 WL 868006 (6th Cir. July 13, 2001). On remand, the district court set aside Rapanos's convictions and dismissed the case, finding that *Solid Waste* had changed the scope of federal jurisdiction under the Clean Water Act. The district court found that because the wetlands on Rapanos's property were not "directly adjacent to navigable waters," the government could not regulate them. *United States v. Rapanos*, 190 F. Supp. 2d 1011, 1015-16 (E.D. Mich. 2002). The United States appealed this order, which brings this case before us now.

We review the district court's statutory and legal interpretations *de novo. United States v. Markwood*, 48 F.3d 969, 975 (6th Cir. 1995). The two questions at issue are whether the district court correctly interpreted the holding of *Solid Waste* and applied it to the facts of this case and whether the original jury instructions were correct in light of *Solid Waste.*

The controversy in *Solid Waste* arose from a group of Chicago suburbs' efforts to find new landfill areas. 531 U.S. at 162-63. They targeted land that had been a sand and gravel mining area from the late 1920's until 1960. *Id*. at 163. Once the mining operation was abandoned, a forest began to take over, and some of the excavation areas collected enough water to become permanent and seasonal ponds. *Id*. When the suburbs wanted to use the land for landfill, the United States Army Corps of Engineers objected to this destruction of "waters of the United States." *Id*. at 164. The non-navigable and isolated ponds were given this designation because the ponds had become the home of migratory birds; the Corps had recently promulgated the "Migratory Bird Rule," which brought waters that were home to migratory birds under federal jurisdiction, based on the principle that "millions of Americans cross state lines and spend over a billion dollars to hunt and observe migratory birds." *Id*. at 166. In *Solid Waste*, however, the Supreme Court rejected that basis for Clean Water Act jurisdiction and ruled that the Migratory Bird Rule exceeded the limitations of the Clean Water Act. *Id*. at 174. The ponds were, therefore, not "waters of the United States," and the group of suburbs was allowed to develop the land without federal interference. *Id*.

The primary question in the case before us is one of jurisdiction. Rapanos claims that *Solid Waste* has redefined the jurisdiction of the Clean Water Act to such a degree that his land is no longer under the Act's protection. We must first turn to the Act itself. The Clean Water Act prohibits the "discharge of any pollutant by any person" except for certain situations enumerated in the Act itself. 33 U.S.C. § 1311(a).

One of the exceptions is that a permit must be issued by the Corps of Engineers "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a). "Navigable waters" is in turn defined as "waters of the United States, including territorial seas," 33 U.S.C. § 1362(7), and the Supreme Court has noted that "Congress chose to define waters covered by the Act broadly" in that definition. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133 (1985). Although simple in theory, the application of "waters of the United States" has been anything but straightforward.

As common sense makes clear, the Clean Water Act cannot purport to police only the navigable-in-fact waters in the United States in order to keep those waters clean from pollutants. A pollutant can contaminate non-navigable water and pollute the navigable-in-fact waters downstream. Congress acknowledged this reality when it created the Clean Water Act, stating, "Water moves in hydrological cycles and it is essential that discharge of pollutants be controlled at the source." S.Rep. No. 92-414, at 77 (1972). As *Solid Waste* makes clear, however, the need to protect the navigable waters from pollution, as the Clean Water Act intends, does not require extending the federal government's jurisdiction over all non-navigable waters.

Wetlands have presented one of the most difficult areas in which to determine the Clean Water Act's exact jurisdictional limitations. Although wetlands are not traditionally navigable-in-fact, they play an important ecological role where they exist. In 40 C.F.R. § 230.3(s), the regulation specifies protection for wetlands that

affect interstate or foreign commerce . . . [,] [w]hich are or could be used by interstate or foreign travelers for recreational or other purposes . . . [,] [f]rom which fish or shellfish are or could be taken and sold in interstate or foreign commerce [, and] [w]hich are or could be used

for industrial purposes by industries in interstate commerce.

Additionally, the regulation specifies coverage for "[w]etlands adjacent to waters" listed above. *Id*. Essentially, any wetlands adjacent to waters that are protected by the Clean Water Act are also protected. *Id*.

The Supreme Court first addressed this question of the applicability of the Clean Water Act to wetlands in *Riverside Bayview*, 474 U.S. 121, a case originally from this circuit. In that case, a landowner wished to develop his wetlands area for a housing development. *Id*. at 124. The wetlands were located in close proximity to Lake St. Clair, Michigan, a navigable-in-fact body of water. *Id*. The Court held that non-navigable wetlands, if adjacent to navigable water, are under the jurisdiction of the Clean Water Act. *Id*. at 131. The Court recognized that the next question before them was whether "the [Corps' definition of wetlands] itself is valid as a construction of the term 'waters of the United States.'" *Id*. The Court noted that "Congress chose to define the waters covered by the Act broadly. . . . [T]he term 'navigable' . . . is of limited import." *Id*. at 133. The Court ultimately held that "a definition of 'waters of the United States' encompassing all wetlands adjacent to other bodies of water over which the Corps has jurisdiction is a permissible interpretation of the Act." *Id*. at 135. In the post-*Riverside* jurisprudence, however, the question remains as to how far the jurisdiction may go and remain a "permissible interpretation."

The Supreme Court's most recent exploration of the extent of Clean Water Act jurisdiction comes in *Solid Waste*, 531 U.S. 159. In that case, the Court recognized that constitutional limits exist as to how far Congress can extend the Clean Water Act's coverage beyond navigable-in-fact waters. In *Solid Waste*, the water in question was in permanent and seasonal ponds with no hydrological connection to other waterways. *Id*. at 163. The United States claimed federal jurisdiction over the ponds through the

"Migratory Bird Rule." 51 Fed. Reg. 41217 (Nov. 13, 1986) (was codified at 33 C.F.R. § 328.3). The Court ruled that the Migratory Bird Rule "exceeds the authority granted to the respondents under § 404(a) of the [Clean Water Act]." *Solid Waste*, 531 U.S. at 174.

Here, Rapanos successfully argued to the district court that *Solid Waste* drastically changed the scope of power granted by the Clean Water Act. In support of his argument, Rapanos turns to Chief Justice Rehnquist's frequent use in the majority opinion of the phrase "wetlands adjacent to water." Rapanos argues that by the use of this phrasing, the Court required that wetlands be *directly* adjacent to navigable water in order for the wetlands to be covered by the Clean Water Act. Although the wetlands were incidentally directly adjacent to navigable-in-fact water in *Riverside*, this interpretation would mark a stark departure from the broad interpretation of the Clean Water Act's scope expressed by the Court in that case. *See Riverside*, 474 U.S. 121.

*Riverside Bayview* established that it was a reasonable application of the Clean Water Act to protect wetlands "adjacent to" navigable waterways. 474 U.S. at 135. *Solid Waste* stated that the Migratory Bird Rule was an unreasonable application of the Clean Water Act. 531 U.S. at 174.

This case is closer to *Riverside Bayview* than to *Solid Waste*. In drawing this conclusion, we find persuasive the Fourth Circuit's recent decision in *United States v. Deaton*, 332 F.3d 698 (4th Cir. 2003). In *Deaton*, the defendants were charged under the same statute as Rapanos. *Id*. at 701. In a further similarity, *Deaton* involved wetlands that drain into a ditch which must pass through other waterways to get to navigable-in-fact water, just as is the case on Rapanos's land. *Id*. at 702. The Fourth Circuit analyzed the situation in light of the Supreme Court's decision in *Solid Waste* and held, *id*. at 709 (citations omitted), that

[*Solid Waste*], of course, emphasizes that the [Clean Water Act] is based on Congress' power over navigable waters, suggesting that covered non-navigable waters are those with some connection to navigable ones. But we cannot tell from the Act the extent to which nonnavigable tributaries are covered. The statutory term "waters of the United States" is sufficiently ambiguous to constitute an implied delegation of authority to the Corps; this authority permits the Corps to determine which waters are to be covered within the range suggested by [*Solid Waste*].

The court further stated, *id*. at 712 (citations omitted),

In *Riverside Bayview* the Supreme Court concluded that the Corps regulation extending jurisdiction to adjacent wetlands was a reasonable interpretation in part because of what [*Solid Waste*] described as "the significant nexus between the wetlands and 'navigable waters.'" There is also a nexus between a navigable waterway and its nonnavigable tributaries. . . . This nexus, in light of the "breadth of congressional concern for protection of water quality and aquatic ecosystems," is sufficient to allow the Corps to determine reasonably that its jurisdiction over the whole tributary system of any navigable waterway is warranted. The regulation, as the Corps reads it, reflects a reasonable interpretation of the Clean Water Act. The Act thus reaches to the roadside ditch and its adjacent wetlands.

Because we find the Fourth Circuit's reasoning persuasive, we disagree with the broad interpretation of *Solid Waste* taken by the district court in this case, *Rapanos*, 190 F. Supp.2d at 1016, and, instead, agree with *Deaton*, 332 F.3d 698 at 708-9. Although the *Solid Waste* opinion limits the application of the Clean Water Act, the Court did not go as far as Rapanos argues, restricting the Act's coverage to only wetlands directly abutting navigable water. Instead, the *Solid Waste* Court, in a narrow holding, invalidated the Migratory Bird

Rule as exceeding the authority granted to the Army Corps of Engineers by the Clean Water Act, because it found "nothing approaching a clear statement from Congress that it intended [the Act] to reach an abandoned sand and gravel pit." *Solid Waste*, 531 U.S. at 174.

The evidence presented in this case suffices to show that the wetlands on Rapanos's land are adjacent to the Labozinski Drain, especially in view of the hydrological connection between the two. It follows under the analysis in *Deaton*, with which we agree, that the Rapanos wetlands are covered by the Clean Water Act. Any contamination of the Rapanos wetlands could affect the Drain, which, in turn could affect navigable-in-fact waters. Therefore, the protection of the wetlands on Rapanos's land is a fair extension of the Clean Water Act. *Solid Waste* requires a "significant nexus between the wetlands and 'navigable waters,'" 531 U.S. at 167, for there to be jurisdiction under the Clean Water Act. Because the wetlands are adjacent to the Drain and there exists a hydrological connection among the wetlands, the Drain, and the Kawkawlin River, we find an ample nexus to establish jurisdiction. *Riverside Bayview*, 474 U.S. at 133.

We now turn to the second question before us, regarding the disputed jury instruction. The instruction reads as follows:

The term waters of the United States includes waters such as lakes, rivers, streams, including intermittent streams or wetlands. The use, degradation, or destruction of, which could affect interstate or foreign commerce, including any such water from which fish or shellfish are or could be taken and sold in interstate commerce.
The definition of waters of the United States also includes tributaries of the waters . . . just identified, and wetlands adjacent to waters of the United States.

Rapanos did not object to the jury instruction; in fact, he specifically requested them. Our review of the instruction is

therefore for plain error. Fed R. Crim. P. 52(b). We have stated in *United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997) (citations omitted), that

> [O]ur inquiry under Rule 52(b) consists of the following four distinct, though interrelated, analyses: (1) whether an error occurred in the district court; (2) if error occurred, whether the error was plain; (3) if the error was plain, whether the plain error affected substantial rights; and (4) "even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings."

In this case, we need only go so far as the first part of the Rule 52(b) inquiry as set forth in *Jones*. Because the *Solid Waste* holding was limited in the way we have described, there was no error in the jury instructions. *Solid Waste* invalidated the "Migratory Bird Rule" but it did not invalidate the agency's regulations upon which the jury instruction was based. *See* 33 C.F.R. § 328(a)(3).

Moreover, even if the jury instruction could be interpreted to have permitted the jury to find that the wetlands at issue were covered because the "affect commerce" language somehow permits an inference like that rejected in *Solid Waste*, there is no indication that such an error affected substantial rights in this case. There was no evidence of migratory bird activity in Rapanos's wetlands. Therefore, the jury could not have based its decision on impermissible grounds, and Rapanos's substantial rights could not have been affected.

For the foregoing reasons, we REVERSE the decision of the district court and REINSTATE the conviction. 28 U.S.C. § 2106. In light of our previous ruling, the case is hereby

REMANDED to the district court for resentencing based on a total offense level of twelve. *See Rapanos*, 235 F.3d at 261.